# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| TINA M. WELLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) No. 05-0041-CV-W-FJG |
| | ) |
| LEGAL AID OF WESTERN MISSOURI, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Currently pending before the Court is defendant's Motion to Dismiss Case and/or to Enforce Settlement Agreement (Doc. # 45).

### I. BACKGROUND

On February 16, 2005, plaintiff filed her Complaint against the defendants, Legal Aid of Western Missouri and William A. Shull, III. On August 30, 2005, the Court granted defendant Shull's Motion to Dismiss. The case was included in the Court's Early Assessment Program and the parties were assigned to meet with the Program Administrator, Kent Snapp. On December 6, 2005, Mr. Snapp conducted an early assessment mediation at the EAP offices in the federal courthouse in Kansas City, Missouri. Plaintiff and her attorney, Tina M. Crow Halcomb attended, as well as counsel for defendant and LAWMO's Executive Director and President of the Board of Directors. The parties participated in mediation and reached an agreement. On December 19, 2005, defendant forwarded for execution a written release and settlement agreement memorializing the terms of the agreement. On December 29, 2005, plaintiff, acting pro

se, filed a "Request to Appear Pro Se." In this pleading, plaintiff states that she is not interested in the settlement. She alleges that she "was induced into an agreement with statements that she would not have to pay taxes upon the amount agreed upon."

On March 22, 2006, the Court held a hearing on defendant's Motion to Enforce the Settlement. Counsel for defendant questioned his associate about her email correspondence with plaintiff's attorney. Defendant also questioned Kent Snapp, the EAP Administrator regarding the mediation which occurred in December. Mr. Snapp testified that the mediation began at approximately 1:00 p.m. and ended around 5:30 p.m. that evening. He testified that an agreement was reached to resolve the litigation. On December 13, 2005, Mr. Snapp testified that he prepared a memo to the file summarizing what had occurred. His memo stated:

> We had our first early assessment meeting in this case on December 6, 2005. We started at approximately 1 p.m. and at approximately 5:20 p.m. I called off all ADR and mediation and confirmed the following settlement agreement. Defendant will pay to plaintiff and to plaintiff's attorney the total of $19,500. Defendant will receive a full release as to defendant's agents, servants and employees. This case will be dismissed with prejudice in this courthouse. Each party will bear their own court costs in this courthouse. There will be a confidentiality agreement and plaintiff will agree not to reapply for employment with the defendant. Defendant will write a check pursuant to 1099, and plaintiff agrees to indemnify the defendant for any actions arising out of the settlement and the settlement transaction. Defendant will write the check on or before January 15, 2006. All agreed.

(Defendant's Exh. 5).

Plaintiff had an opportunity to cross-examine Mr. Snapp. In lieu of testifying, plaintiff chose to submit her testimony to the Court in an affidavit. Defendant was given an opportunity to file objections to this Affidavit. The Court having reviewed plaintiff's Affidavit, defendant's objections thereto and plaintiff's reply suggestions hereby rules as follows.

## II. DISCUSSION

**A. Express Authority**

> Settlement agreements are governed by contract law. . . . In order for a settlement agreement to be enforceable, the parties must have reached agreement on the essential terms of the deal . . . Even if the parties have left some details for counsel to work out through further negotiation, a legal, valid settlement agreement still exists. . . . Finally, the party requesting enforcement of a settlement agreement has the burden of proving its claim for relief by clear, convincing, and satisfactory evidence.

Kenner v. City of Richmond Heights, Missouri, 356 F.Supp.2d 1002, 1007-08 (E.D.Mo. 2005), aff'd, 2006 WL 2620645 (8th Cir. Sept. 14, 2006)(internal citations omitted).

"'Once it is shown . . . that an attorney has entered into an agreement to settle a case, the party who denies that the attorney was authorized to enter into the settlement has the burden to prove that authorization was not given. This is a heavy burden.'" Harris v. Arkansas State Highway & Transp. Dept., 437 F.3d 749 (8th Cir. 2006), quoting Greater Kansas City Laborers Pension Fund v. Paramount Indus., Inc., 829 F.2d 644, 646 (8th Cir. 1987)(citations omitted).

In McEnany v. West Delaware County Comm. School Dist., 844 F.Supp. 523 (N.D.Iowa 1994), the court stated:

> A settlement entered into by a party's attorney may be set aside if there is evidence that the attorney lacked the authority to settle the case on the party's behalf.
> Although an attorney is presumed to possess authority to act on behalf of the client, a judgment entered upon an agreement by the attorney may be set aside on affirmative proof that the attorney had no right to consent to its entry. . . . An attorney must have express authority to settle a case on a client's behalf. . . . An attorney's authority to settle a case can be created by written or spoken words or the conduct of the principal which, reasonably interpreted, causes an agent to believe that the principal desires the attorney to act in a particular manner on the principal's behalf. . . . Once it is shown, however, that an attorney has entered into an agreement to settle a case, the party who denies that the attorney was authorized to enter into the settlement has the burden to prove that authorization was not given. . . . This is a heavy burden.

Id. at 529-530 (internal citations and quotations omitted).  In that case, the Court noted that during mediated settlement negotiations, plaintiff's counsel "made several manifestations to the defendants and to the mediator sufficient to create [her attorney's] apparent authority to settle this matter on her behalf." Id. at 530, n.4. Plaintiff in that case attended the mediation session with her counsel, she allowed him to talk to the defendants and the mediator outside of her presence, she allowed him to conduct negotiations with the mediator and acceded to the settlement that he had negotiated for her in the presence of the mediator.  The Court observed that the plaintiff should have realized that her conduct "was likely to create a belief on the part of third parties that [her attorney] had authority to settle the case on her behalf." Id. The Court also noted that plaintiff in that case expressly created her attorney's authority to settle in the final session with the mediator and her attorney when she stated, "I guess I better do what my attorney says." Id. at 530.  In that case, plaintiff argued that her agreement to settle had been coerced by her attorney and the mediator, that they had ignored issues of significance to her and that they had coerced her with threats that they would withdraw from the case if she did not go forward with the settlement. The Court in McEnany noted that the Eighth Circuit had not dealt with a case before in which a party alleged that a settlement was the result of coercion or undue influence by one's own attorney. However, the Court observed that two other courts had addressed the issue:  Macktal v. Secretary of Labor, 923 F.2d 1150 (5th Cir. 1991) and Janneh v. GAF Corp, 887 F.2d 432 (2d Cir. 1989), cert. denied, 498 U.S. 865 (1990), overruled on other grounds by, Digital Equipment Corp. v. Desktop Direct Inc., 511 U.S. 863 (1994).  In neither of those cases did the Courts void the settlements based on the plaintiff's allegations that they were coerced into settling their cases.  Similarly, in McEnany, the Court concluded that

4

the plaintiff had not been coerced into agreeing to settle the case. The Court stated:

> the decisive factor is not whether plaintiff now feels coerced into settlement; instead, the decisive factors are whether there was sufficient authority to enter into the agreement and whether the opposing party should be deprived of the benefits of the settlement agreement negotiated. The court has concluded that [plaintiff's counsel] had express authority to settle the case. The parties should not be deprived of the benefits of the settlement agreement on the ground that one of the parties now rejects it as inadequate . . . or as the product of coercion.

Id. at 531 (citations omitted).

The Court finds that in this case, plaintiff's counsel, Tina Crow Halcomb had express authority to settle the case during the mediation. Mr. Snapp testified that Ms. Halcomb was present with the plaintiff throughout the mediation, she negotiated with Mr. Snapp and spoke with opposing counsel. Counsel for defendant also sent an email to Ms. Crow Halcomb on December 19, 2006, enclosing the written release and settlement agreement and dismissal papers. Additionally, plaintiff states in her affidavit:

> I suspected that I was being lied to about the tax consequences and the "usual" confidentiality agreement, and said I would only agree to not take out an ad in the newspaper, and also would only sign an agreement reflecting that. *Mr Snapp asked me whether Ms. Crow-Halcomb had represented me, and I said, "yes"*, although I thought part of the time she was representing my opposition, and she was authorized in strategy, not the final decision, his knowledge of which was indicated when he asked me separately whether I agreed. He then asked whether I agreed to the $19,500. I'd already refused, saying that I would not settle the case for "50 cents", so he knew I did not. *To avoid more meaningless argument, I said, "Yes, IF any written agreement reflects the money arrangement exactly as I was told and agreed to, including the tax consequences"*, and that *I would only settle for economic reasons.*

(Plaintiff's March 18, 2006 Affidavit)(emphasis added).

As can be seen from this brief excerpt from plaintiff's own affidavit, plaintiff specifically told Mr. Snapp that Ms. Crow Halcomb was authorized to represent her. Additionally, by coming to the mediation with Ms. Crow Halcomb and allowing her to

5

negotiate on her behalf, plaintiff through her words and actions gave the impression to Mr. Snapp and to the defendants that Ms. Crow Halcomb was authorized to represent her. Although plaintiff argues now that Ms. Crow Halcomb was not adequately representing her or was only authorized to represent her in strategy, and not as to the final decision, these limitations were not made evident at the time of the mediation. In Harris, 437 F.3d 749, the Court stated, "'arguments addressing the adequacy of [an attorney's] legal representation, regardless of their merit, are irrelevant' to the determination of whether a party gave her attorney express authority to enter into a settlement agreement." Id. at 752, quoting Mueller v. Guardian Life Ins. Co., 143 F.3d 414, 416 (8th Cir. 1998). Therefore, the Court finds that Ms. Crow Halcomb had express authority to settle the case pursuant to the terms as explained in Mr. Snapp's memorandum. Plaintiff has failed to offer any credible evidence that would indicate that her attorney lacked authority to settle the case.

**B. Meeting of the Minds**

Plaintiff also argues in her Affidavit that there was no "meeting of the minds" regarding the terms of the settlement, especially since the terms were only agreed to orally and there was no written agreement drafted up during the mediation. Plaintiff complains principally with regard to the issue of taxes on the settlement and also with regard to the confidentiality provision. Plaintiff states that her attorney told her that she would not have to pay any taxes on the settlement proceeds and neither would the defendant. Plaintiff states that she has conducted research revealing that she will in fact owe taxes on the amount of the settlement. Plaintiff also argues that she did not agree to give up her First Amendment rights and was adamant about this. Plaintiff now complains that the confidentiality provision was more extensive than what she agreed

6

to. Plaintiff states in her affidavit, "[j]ust because I agreed to parts of a contract, does not make it an entire contract, as it lacks a 'meeting of the minds' on all essential issues, and it is not enforceable, as it does not even exist." (Plaintiff's March 18, 2006 Affidavit, p. 6).

The Court does not agree that these objections to the agreement indicate that there was no meeting of the minds. With regard to the tax consequences, while plaintiff's counsel may have misinformed her regarding the tax situation on the settlement proceeds, this does not void the settlement. In Christianson v. Henderson, No. 4-97-CV-20826, 2000 WL 33364122, *5 (S.D. Iowa Mar. 10, 2000), the Court stated that the fact that defendant's unilateral mistake was caused by its attorney did not warrant exception to rule that a unilateral mistake is insufficient to rescind or reform agreement, absent fraud or some other inequitable conduct. With regard to the confidentiality provision being broader than what plaintiff states she agreed to, this also has been found not to void a settlement. In Nwachukwu v. St. Louis University, 114 Fed.Appx. 264, 2004 WL 2472276 (8th Cir. 2004), the plaintiff argued that the final settlement agreement prepared by counsel was materially different from the handwritten agreement that she signed at the end of the mediation. However, the Court found that the final agreement contained substantially the same terms and benefits as the handwritten agreement and both agreements provided that she would resign and execute a release of all claims, even though the final agreement contained more expansive or additional clauses related to confidentiality, release of liability, disclaimer of fault, nondisparagement and reinstatement of reemployment. See also, Worthy v. McKesson Corp., 756 F.2d 1370, 1373 (8th Cir. 1985)(per curiam)(fact that parties left insubstantial matters, like confidentiality provision, general release of claims and

7

agreement not to seek reemployment for later negotiation did not vitiate the validity of the agreement).

Therefore, the Court finds that there was a meeting of the minds and a settlement was reached between the parties on December 6, 2005.

### III. CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** defendant's Motion to Enforce Settlement Agreement (Doc. # 45). All other pending motions are hereby **DENIED** as **MOOT**. The Court finds that the Settlement agreed to by the parties is that which was reached on December 6, 2005 during the Early Assessment Program mediation, as testified to by Kent Snapp. Plaintiff's case is hereby **DISMISSED** with **PREJUDICE**. The Court will retain jurisdiction over the settlement agreement for enforcement purposes only.

Defendant's counsel shall submit an affidavit detailing the amount of attorney fees and costs expending in filing the Motion to Enforce on or before **October 16, 2006**. The Court will thereafter determine if a hearing is necessary on this issue.

Date: September 28, 2006           **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri           Fernando J. Gaitan, Jr.
          United States District Judge